**PERKINS COIE LLP**
John R. Hardin, *pro hac vice forthcoming*
JohnHardin@perkinscoie.com
500 N. Akard Street, Suite 3300
Dallas, Texas 75201
Telephone: 214.965.7700
Facsimile: 214.965.7799

Jacob J. Taber, *pro hac vice forthcoming*
JTaber@perkinscoie.com
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Telephone: 212.262.6900
Facsimile: 212.977.1649

David P. Chiappetta, Bar No. 172099
DChiappetta@perkinscoie.com
Lauren A. Trambley, Bar No. 340634
LTrambley@perkinscoie.com
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone: 415.344.7000
Facsimile: 415.344.7050

Attorneys for Defendant
Sagar Reddy

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| COINMINT, LLC, <br><br> Plaintiff, <br><br> v. <br><br> DX CORR DESIGN, INC., a California Corporation, SAGAR REDDY, an individual, ROBERT BLECK, an individual, JIM DENAUT, an individual, FRANK KINNEY, an individual, and DOES 1-40, inclusive, <br><br> Defendants. | Case No. 23-cv-00599-VKD <br><br> **SAGAR REDDY'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY THE ACTION PENDING ARBITRATION** <br><br> Date: April 10, 2023 <br> Time: 10:00 a.m. |

**TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................................. 2

    A. Coinmint and Katena enter into the Agreement................................................... 2

    B. The Agreement requires that Coinmint arbitrate any dispute arising or relating to the Agreement before the American Arbitration Association. ............ 3

    C. Coinmint breaches the Agreement. ....................................................................... 3

    D. Coinmint and Katena are arbitrating their disputes before the American Arbitration Association, with a hearing commencing in August 2023. ................. 4

    E. Coinmint files this deficient lawsuit. .................................................................... 4

III. THE COURT SHOULD STAY THIS ACTION PENDING THE ARBITRATION. ....... 5

    A. The Federal Arbitration Act requires that this Court stay this lawsuit because it is based upon issues "referable to arbitration." .................................... 5

        1. Coinmint has conceded that the Agreement includes a valid agreement to arbitrate. ................................................................................ 6

        2. This Action is based on issues referable to arbitration. ............................. 6

    B. California law permits Reddy to enforce the Arbitration Clause to invoke a stay under 9 U.S.C. § 3. ......................................................................................... 8

        1. Reliance on Underlying Contract. .............................................................. 8

        2. Substantial interdependence. .................................................................... 10

    C. A stay is required under 9 U.S.C. § 3................................................................. 11

    D. The issue of arbitrability is committed to the Arbitrators. ................................. 12

IV. CONCLUSION ................................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson LLP v. Carlisle*,
    556 U.S. 624 (2009) ................................................................................................................ 5

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ................................................................................................................ 5

*Boucher v. Alliance Title Co., Inc.*,
    127 Cal. App. 4th 262 (2005) .................................................................................................. 9

*Guidewire Software, Inc. v. Chookaszian*,
    No. 12-CV-03224-LHK, 2012 WL 5379589 (N.D. Cal. Oct. 31, 2012) ................................ 12

*In re Pac. Fertility Ctr. Litig.*,
    814 F. App'x 206 (9th Cir. 2020) ............................................................... 8, 9, 10, 11

*Johnmohammadi v. Bloomingdale's, Inc.*,
    755 F.3d 1072 (9th Cir. 2014)................................................................................................. 5

*Kramer v. Toyota Motor Corp.*,
    705 F.3d 1122 (9th Cir. 2013).................................................................................. 8, 9, 10

*Metalclad Corp. v. Ventana Envtl. Org. P'ship*,
    109 Cal. App. 4th 1705 (2003) ........................................................................................ 9, 10

*Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*,
    186 Cal. App. 4th 696 (2010) .............................................................................................. 8, 9

*STM Atl. N.V. v. Dong Yin Dev. Holdings Ltd.*,
    2019 WL 2417625 (C.D. Cal. Feb. 15, 2019)............................................................ 6, 10, 11

*Tompkins v. 23andMe, Inc.*,
    No. 5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014), aff'd,
    840 F.3d 1016 (9th Cir. 2016).................................................................................................. 5

STATUTES

California Business and Professions Code section 17200 ............................................................ 10

Federal Arbitration Act, 9 U.S.C. § 3 .................................................................................. passim

| | |
|---|---|
| 1 | **NOTICE OF MOTION AND MOTION** |
| 2 | PLEASE TAKE NOTICE that on April 10, 2023, at 10 A.M., or as soon as the matter |
| 3 | may be heard thereafter, in the San Jose Courthouse, 280 South 1st Street, San Jose, California, |
| 4 | Floor 5, Courtroom 2 before Judge Virginia K. DeMarchi or another Judge duly-assigned by the |
| 5 | Court, Defendant Sagar Reddy ("Reddy") will and hereby does move the Court for an Order |
| 6 | staying the above-captioned case (the "Action") pending arbitration. |
| 7 | In particular, Reddy requests pursuant to the Federal Arbitration Act, 9 U.S.C. § 3, that the |
| 8 | Court stay the Action pending arbitration, as the Action includes issues referable to arbitration |
| 9 | under an agreement in writing for such arbitration. |
| 10 | **STATEMENT OF ISSUE TO BE DECIDED** |
| 11 | Whether this action is based upon issues referable to arbitration and thus subject to a stay |
| 12 | under 9 U.S.C. § 3. |
| 13 | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| 14 | **I.     INTRODUCTION** |
| 15 | This dispute stems from a $150 Million agreement (the "Agreement") between Plaintiff |
| 16 | Coinmint and nonparty Katena Computing Technologies, Inc. ("Katena") for the purchase of |
| 17 | Bitcoin mining rigs from Katena. Coinmint and Katena are already litigating the key issues |
| 18 | raised by Coinmint in this Action before the American Arbitration Association — including |
| 19 | Coinmint's request to invalidate the Agreement and its demand for $23 million in damages. |
| 20 | The Agreement was signed on May 12, 2021, at the height of Bitcoin's value, and |
| 21 | required Coinmint to make a substantial down-payment three days later. But with the precipitous |
| 22 | drop in Bitcoin's value that was happening in real time (and continued for months), Coinmint was |
| 23 | unable to make the down payment, and ultimately initiated a AAA Arbitration (the "Arbitration") |
| 24 | against Katena as a way to get out of the Agreement. In selecting the arbitral forum, Coinmint |
| 25 | relied on the Arbitration Clause contained in the Agreement. In the Arbitration, Coinmint sought |
| 26 | discovery, depositions, and evidentiary testimony from, among others, the very defendants it has |
| 27 | named in the Action: DxCorr (a company designing the chip for the mining rigs), Reddy, Michael |
| 28 | |

Maloney (Coinmint's former CFO and "DOE 1"), James DeNaut (its former interim CEO), and Robert Bleck (an engineer who performed due diligence on Katena's tech).[1]  *It then filed this lawsuit against DxCorr and these same individuals as leverage.*

This lawsuit stems entirely from the Agreement between Katena and Coinmint that is the subject of the Arbitration, and it should be stayed pending the Arbitration.  Katena appears *one hundred and fifty-eight* times in the twenty-two-page Complaint.[2]  The crux of Coinmint's claims — both here and in the Arbitration — is that Katena conspired with the Defendants to induce Coinmint to enter into an agreement with Katena.  As Coinmint puts it, "[t]his action arises from a [purported] fraudulent scheme *perpetrated by Katena*." Compl. ¶ 9 (emphasis added).  It is that exact purported scheme which is the subject of the Arbitration.

The most efficient course of action is for this Court to stay this Action in favor of Arbitration.  Coinmint's entire Complaint hinges on the existence of and circumstances surrounding the Coinmint/Katena Agreement that Coinmint admits contains a mandatory arbitration clause.  California law is clear that a non-signatory to a contract (like Reddy) may enforce an arbitration clause against a signatory where the signatory's claims depend on the existence of the contract containing the arbitration clause.  Katena — and the Coinmint/Katena Agreement — are central to this dispute, and the Action should not proceed in this forum.

## II. FACTUAL BACKGROUND

### A. Coinmint and Katena enter into the Agreement

Plaintiff Coinmint is a bitcoin mining company that operates a large digital currency data center. Compl. ¶ 11.  Non-party Katena is a start-up company that is focused on designing and manufacturing bitcoin mining rigs.  *Id.* ¶ 17.  Defendant Sagar Reddy is a cofounder of Katena

---

[1] Coinmint also asked the Arbitrators to schedule Mr. Kinney as a witness, but that was denied.
[2] Reddy notes that, despite receiving a Notice of Removal (ECF No. 1), Coinmint purported to file a First Amendment to its Complaint in in the Superior Court of California, Santa Clara County.  It appears that Coinmint then tried again, purportedly filing a Second Amended Complaint which was rejected by the state court because Coinmint did not seek leave of the court (nor could it, since the Superior Court had already lost jurisdiction).  Since the removal of this action divested the Superior Court of jurisdiction, rendering null any such efforts to amend the Complaint, Reddy will continue to reference the original Complaint in this Motion.

-2-

and Katena's Chief Technology Officer ("CTO").  *Id.* ¶ 17; Declaration of John R. Hardin ("Hardin Decl.") ¶ 1.

In spring 2021, Coinmint and Katena began discussing a potential transaction by which Coinmint would purchase bitcoin mining rigs from Katena.  Compl. ¶ 20.  These negotiations resulted in Katena and Coinmint executing a Sales and Purchase Agreement dated May 12, 2021 ("SPA") and an associated Purchase Order No. 1 (collectively, the "Agreement").  *Id.* ¶¶ 19–30.

### B. The Agreement requires that Coinmint arbitrate any dispute arising out of or relating to the Agreement before the American Arbitration Association.

Coinmint and Katena agreed to arbitrate any disputes arising out of or relating to the Agreement, *including non-contractual disputes*, before the American Arbitration Association.  The SPA states:

> Any dispute, controversy, difference or claim arising out of or relating to this Agreement, including the existence, validity, interpretation, performance, breach or termination hereof or any dispute regarding non-contractual obligations arising out of or relating to this Agreement shall be referred to and finally resolved by arbitration administered by American Arbitration Association under the rules for commercial arbitration of the American Arbitration Association in force when the notice of arbitration is submitted.  The decision and awards of the arbitration shall be final and binding upon the parties hereto.

Hardin Decl. ¶ 3.  Coinmint asserts that this Arbitration Clause applies to the claims that it is currently pursuing against Katena in arbitration, which mirror those here.  Compl. ¶ 10.

### C. Coinmint breaches the Agreement.

Pursuant to the Agreement, Coinmint agreed to pay Katena $150,000,000 for a specified quantity of Katena's mining rigs.  Compl. ¶ 30.  But, within days of entering the Agreement, Coinmint breached it by failing to make a required down payment.  Compl. ¶ 33.  Coinmint has never made the agreed-upon down payment to Katena, let alone the other payments required under the Agreement, and, therefore, Katena never delivered bitcoin mining rigs to Coinmint.

### D. Coinmint and Katena are arbitrating their disputes before the American Arbitration Association, with a hearing commencing in August 2023.

Coinmint filed an arbitration demand before the American Arbitration Association on April 27, 2022. Hardin Decl. ¶ 4. Coinmint amended its demand on August 29, 2022. *Id.* Through its demand, Coinmint seeks the same relief it seeks here: a declaration that the Agreement was invalid, and a return of the $23 million in non-refundable payments it made under the Agreement. Coinmint asserts a variety of tort claims seeking to invalidate the Agreement, including claims that Coinmint was fraudulently induced to enter an Agreement, just as it has in this Action. *Id.* Katena filed an answering statement and notice of counterclaim on September 16, 2022, countersuing for (among other things) breach of contract and liquidated damages in the amount of $37.5 million guaranteed under the contract. *Id.* ¶ 5.

Coinmint and Katena are currently engaging in discovery in the Arbitration and are set to start the arbitration hearing in August 2023. *Id.* ¶ 6.

### E. Coinmint files this deficient lawsuit.

On January 27, 2023, Coinmint filed this lawsuit in the Superior Court of California, Santa Clara County. On February 9, 2023, Reddy removed the lawsuit to this Court. ECF No. 1.

The Complaint alleges a number of claims against Reddy, DxCorr, and former Coinmint employees and/or independent contractors James DeNaut, Frank Kinney, and Robert Bleck. The Complaint also asserts claims against "DOE 1," who the Complaint elsewhere identifies as Coinmint's former CFO Michael Maloney. Compl. ¶¶ 27, 29 & Ex. 9.[3] Through this lawsuit, as in the Arbitration, Coinmint requests that the Court invalidate its Agreement with Katena (even though such a remedy is subject to the Arbitration under the plain language of the Arbitration Clause agreed to by Coinmint, and even though Katena — the counterparty to the Agreement — is not and cannot be a party to this lawsuit given the Arbitration Clause) Coinmint is also seeking

---

[3] Paragraph 29 of the Complaint describes Exhibit 9 as a "copy of the May 12, 2021 What's App messages between Monzon and DOE 1." Exhibit 9 is a WhatsApp conversation between Mr. Monzon and Michael Maloney. After Reddy removed this Action to federal court, Coinmint filed a motion to amend its state court complaint — which was ineffective since that court had already lost jurisdiction by virtue of the removal — to name Maloney as DOE 1.

-4-

$23 million in damages against each Defendant in this action, reflecting its non-refundable partial down payment under the Agreement — the exact same monetary damages it is seeking against Katena in the Arbitration. *Id.* ¶ 52.

### III. THE COURT SHOULD STAY THIS ACTION PENDING THE ARBITRATION.

This Court should stay this Action pending the Arbitration. The issues to be determined here are "referable to arbitration" under 9 U.S.C. § 3 because they fall within the scope of the Agreement's broad arbitration clause. Indeed, Coinmint is already arbitrating related claims in the Arbitration, and Coinmint is seeking remedies *identical* to the remedies it seeks through this action. Moreover, a non-signatory litigant like Reddy may invoke a stay under Section 3 of the FAA where traditional state contract principles would permit the non-signatory to enforce the agreement. *Anderson LLP v. Carlisle*, 556 U.S. 624, 629-31 (2009). Coinmint is equitably estopped from refusing to arbitrate this dispute in the proper forum, and this Court must grant a stay of this action pending the disposition of the already-filed arbitration.

#### A. The Federal Arbitration Act requires that this Court stay this lawsuit because it is based upon issues "referable to arbitration."

The Federal Arbitration Act requires that a court stay a lawsuit where "any issue" in the lawsuit is "referable to arbitration" under an arbitration agreement. 9 U.S.C. § 3.

The FAA reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.* at 344.[4] Where, as here, the issues in the case are within the reach of the arbitration agreement, the district court must grant the request for a stay. *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073 (9th Cir. 2014); 9 U.S.C. § 3.

---

[4] The Federal Arbitration Act ("FAA") applies to the Agreement because the purchase of the rigs affects interstate commerce. *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *4 (N.D. Cal. June 25, 2014), aff'd, 840 F.3d 1016 (9th Cir. 2016) ("The [FAA] applies to arbitration agreements in any contract affecting interstate commerce."). Here, a California company (Katena) agreed to produce goods overseas and deliver them overseas to a Puerto Rico company (Plaintiff); the facts underlying this case undoubtedly affects not only interstate commerce but international commerce.

-5-

Section 3 of the Federal Arbitration Act states:

> If any suit or proceeding be brought in any of the courts of the United States upon *any issue* referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement,** providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

Accordingly, this Court must stay the action on application of a party "upon being satisfied that [any] issue involved in such suit or proceeding is referable to arbitration" under a written agreement to arbitrate between the parties. *Id.*; *see also STM Atl. N.V. v. Dong Yin Dev. Holdings Ltd.*, 2019 WL 2417625, at *3 (C.D. Cal. Feb. 15, 2019) ("The statute is clear: where a suit is upon an issue 'referable to arbitration' under an arbitration agreement, a stay of such suit is mandatory.").

### 1. Coinmint has conceded that the Agreement includes a valid agreement to arbitrate.

Coinmint concedes that the Agreement includes a valid agreement to arbitrate. 9 U.S.C. § 3 (court must stay a suit where the suit is upon any issue "referable to arbitration" and "under an agreement in writing for such arbitration"). In fact, Coinmint relied on that arbitration agreement to commence the Arbitration, and Coinmint admits in its Complaint in this Action that the Agreement includes a valid agreement to arbitrate. Compl. ¶ 10 ("Coinmint is presently pursuing its claims against Katena in arbitration pursuant to the arbitration clause in the contract.").

### 2. This Action is based on issues referable to arbitration.

This Action is referable to arbitration because the Agreement encompasses the dispute at issue. According to Coinmint, the Action arises from a purported fraudulent scheme by which Defendants and Katena enticed Coinmint to enter into "a $150 million purchase contract pursuant to which Katena was to provide to Coinmint thousands of bitcoin mining computers and related

microchips ('the contract').” Compl. ¶ 9.  This contract — which was defined by Coinmint to include both the SPA and the Purchase Order (Compl. ¶ 29) — contains the Arbitration Clause and is at the heart of this dispute.  As the Action is grounded upon a purported scheme that allegedly enticed Coinmint to enter into the Agreement, the Action is a "dispute, controversy, difference or claim . . . *relating to this Agreement*" (Hardin Decl. ¶ 3. (emphasis added)) and is thus subject to the Arbitration Clause.  Further, Coinmint requests that this Court rescind the Agreement and declare it void.  Compl. ¶ 52.  As such, the Action concerns the "validity" of the Agreement, and thus again falls within the Arbitration Clause.  It cannot be questioned that the Action contains an "*issue* referable to arbitration," and the action should be stayed pending completion of that arbitration under 9 U.S.C. § 3 (emphasis added).

None of Coinmint's claims here would exist without the Agreement.  The eight claims against each of the individual Defendants only exist because the Defendants were allegedly part of a "scheme" with signatory Katena by which Defendants "utilize[d] their positions as officers and/or consultants of Coinmint to bind Coinmint to a $150 million purchase contract . . . ." Compl. ¶ 9.  Coinmint alleges in this Action that Defendants repeated Katena's alleged "material misrepresentations" at issue in the Arbitration to induce Katena to enter into the Agreement (Count 1, Compl. ¶ 47) and breached fiduciary duties or contracts with Coinmint in connection with its contract with Katena (Counts 2–5, Compl. ¶¶ 56, 61, 66, 72).  Coinmint specifically alleges that Defendants "conspire[d] with Katena" through their actions preceding Coinmint's signing of the Agreement (Count 6, Compl. ¶¶ 77–80), and further alleges that DxCorr and Mr. Reddy interfered with Mr. Bleck's contract with Coinmint so as to undermine Coinmint's evaluation of Katena's chip design related to its decision to enter into the Agreement. (Count 7, Compl. ¶¶ 83-86).  And finally, Coinmint contends that Defendants engaged in unfair competition by "participating in a fraudulent scheme to induce Coinmint's execution of the S&P Agreement." (Count 8, Compl. ¶ 90).

Each of the claims asserted by Coinmint in the Action is inextricably intertwined with the Agreement, and the issues already being litigated in the Arbitration.  Accordingly, since there is a

-7-

valid Arbitration Clause which covers this dispute, and since the issues raised in the Complaint are referable to Arbitration, the only question for the Court is whether Reddy (as a non-signatory to the Agreement) may enforce the Arbitration Clause.

### B. California law permits Reddy to enforce the Arbitration Clause to invoke a stay under 9 U.S.C. § 3.

Under California law, a non-signatory may enforce an arbitration agreement if equitable estoppel applies. *See Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*, 186 Cal. App. 4th 696, 714 (2010). Equitable estoppel applies in either of two circumstances: "(1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are 'intimately founded in and intertwined with' the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and 'the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement." *In re Pac. Fertility Ctr. Litig.*, 814 F. App'x 206, 208-09 (9th Cir. 2020) (quoting *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013)) (citations omitted). The party seeking to enforce the arbitration clause may prevail by establishing either prong.

This analysis boils down to "whether Plaintiffs would have a claim independent of the existence" of the Agreement. *Kramer*, 705 F.3d at 1131. Coinmint asserts five claims against Reddy which explicitly rely on the terms of the Agreement to assert a claim for $23 million in damages and which are premised on a purported "scheme" to induce Plaintiff to sign the Agreement (Compl. ¶ 9). Coinmint's own pleading thus makes clear that Coinmint's claims are premised on the existence of the Agreement, and that Coinmint has asserted concerted misconduct (a conspiracy) between a signatory, Katena, and a non-signatory, Reddy. As such, Reddy may invoke equitable estoppel to stay this arbitration under either prong of the test.

#### 1. Reliance on Underlying Contract.

The first prong of the equitable estoppel test allows Reddy to enforce the arbitration clause if Coinmint's claims rely on the underlying contract which contains the arbitration clause,

*or if they are intimately founded in and intertwined with the underlying contract.* *In re Pac. Fertility Ctr. Litig.*, 814 F. App'x at 209 (quoting *Kramer*, 705 F.3d at 1128-29).

It is indisputable that Coinmint is relying on the terms of the written Agreement in each of its claims. *First*, Coinmint is seeking to recover the *same damages* that it seeks in its arbitration demand: "not less than $23 million," which is the amount of partial (and belated) deposit payments that Coinmint made to Katena <u>pursuant to the Agreement</u>. Compl. ¶¶ 9, 53, 63, 80, 87, 94. Coinmint cannot seek damages for the amount it paid under the Agreement while simultaneously evading the application of the Agreement's Arbitration Clause. *See Metalclad Corp. v. Ventana Envtl. Org. P'ship*, 109 Cal. App. 4th 1705, 1717 (2003) (reasoning that equitable estoppel applies where a plaintiff "agreed to arbitration in the underlying written contract but now, in effect, seeks the benefit of that contract in the form of damages . . . while avoiding its arbitration provision"). *Second*, Coinmint also seeks to rescind the Agreement (Compl. ¶ 52), a request for relief which necessarily turns on the terms of the contract and the circumstances under which the contract was entered. *See, e.g.*, *Boucher v. Alliance Title Co., Inc.*, 127 Cal. App. 4th 262, 272 (2005) ("By relying on contract terms in a claim against a non-signatory defendant, even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement. . . . The fundamental point is that a party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate by defining the forum in which the dispute will be resolved."). Accordingly, because Coinmint relies on the terms of the Agreement to assert its claims, it is equitably estopped from refusing to arbitrate it's claims. *See Molecular Analytical Sys.*, 186 Cal. App. 4th at 714 ("[U]nder the doctrine of equitable estoppel, if a plaintiff relies on the terms of an agreement to assert his or her claims against a nonsignatory defendant, the plaintiff may be equitably estopped from repudiating the arbitration clause of that very agreement.").

It also cannot be seriously disputed that Coinmint's claims are "'intimately founded in and intertwined with' the underlying contract," which forms an independent basis for a finding of

equitable estoppel under this first prong. *In re Pac. Fertility Ctr. Litig.*, 814 F. App'x at 208 (citing *Kramer* at 1128-29).

The five claims are: (1) that Reddy engaged in fraud to induce Coinmint to sign *the Agreement*, (Count 1; Compl. ¶ 42); (2) that Reddy aided and abetted breaches of fiduciary duties in connection with Coinmint entering into *the Agreement* with Katena, resulting in Coinmint being damaged in the amount that it paid to Katena under *the Agreement* (Count 3; Comp. ¶¶ 61, 63); (3) that Defendants, including Reddy, conspired "*with Katena,*" resulting in Coinmint being damaged in the amount that it paid to Katena under *the Agreement* (Count 6; Compl. ¶ 77, 80); (4) that Reddy interfered with a contract between Defendant Bleck and Coinmint, resulting in Plaintiff being damaged in the amount that it paid to Katena under *the Agreement* (Count 7; Compl. ¶¶ 85, 87); and (5) that Reddy violated California Business and Professions Code section 17200 by participating in Katena's fraudulent scheme "to induce Coinmint's execution" of *the Agreement* (Count 8; ¶ 90). Indeed, California courts have held that a non-signatory may invoke an arbitration clause in circumstances like this one, where a plaintiff alleges that signatories and non-signatories colluded to obtain a contract. In *Metalclad*, 109 Cal. App. 4th at 1717–18, the court applied equitable estoppel where a plaintiff's claims turned on alleged fraud in obtaining the underlying contract. The *Metalclad* court explained that the plaintiff's allegations that the signatory and non-signatory "colluded to obtain [a business] by a fraudulent contract cannot help but be 'intimately founded in and intertwined with that contract, which [plaintiff] signed." *Id.* at 1718. So too here, Reddy is entitled to invoke the arbitration clause in the Agreement. *See also STM Atl. N.V. v. Dong Yin Dev. Holdings Ltd.*, 2019 WL 2417625 (C.D. Cal. Feb. 15, 2019) (applying equitable estoppel and granting nonsignatory's motion to stay pursuant to 9 U.S.C. § 3 where "each cause of action stems from incongruity between expectations formed during contract negotiations and the actual effects of the resulting written agreement").

  **2. Substantial interdependence.**

Under the second prong of the test, Reddy may instead establish his right to enforce the arbitration provision through equitable estoppel "when the signatory alleges substantially

interdependent and concerted misconduct by the non-signatory and another signatory and 'the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement." *In re Pac. Fertility Ctr. Litig.* at 208-09 (citations omitted). Reddy easily satisfies this prong, too.

As discussed in the preceding section, *each* of the five claims asserted against Reddy is predicated upon alleged "interdependent and concerted misconduct" between him (a non-signatory) and Katena (a signatory), and it is this alleged joint conduct that gave rise to the Agreement. This case is on all fours with *STM Atl. N.V. v. Dong Yin Dev. Holdings Ltd.*, 2019 WL 2417625 (C.D. Cal. Feb. 15, 2019). In that case, the court granted a non-signatory defendant's motion to stay the action pursuant to 9 U.S.C. § 3. The plaintiffs there, like Plaintiff here, alleged a scheme amongst the defendants to induce plaintiffs to enter into an agreement. *Id.* at *2. In granting the defendant's motion, the *STM Atl. N.V.* court explained that the case met the second prong of the equitable estoppel test, reasoning that "Plaintiffs claims. . . stem from allegations of a concerted effort by [defendants]," which led to the creation of the agreement which contained the arbitration clause. *Id.* at *6. The court further explained that it was appropriate to stay the action during an already-pending arbitration because the plaintiffs' alleged injuries were "the precipitate of contractual rights and obligations manifested in the [relevant agreement]" which were already being litigated in arbitration. *Id.* at *6. So too here: the Arbitration and this Action are the same dispute and must be resolved in arbitration, as contemplated by the Agreement.

**C.    A stay is required under 9 U.S.C. § 3.**

As set forth in Section A above, all of Coinmint's claims are referable to arbitration. Accordingly, 9 U.S.C. § 3 requires that this Court stay this Action until the Arbitration "has been had in accordance with the terms of the Agreement."

Allowing this Action to go forward simultaneously with the Arbitration would result in multiple and potentially inconsistent obligations. Non-party Katena is currently defending an arbitration brought by Coinmint before the American Arbitration Association which deals with

the same core issues that Coinmint seeks to litigate in this Action: the validity of the Agreement and the circumstances under which the parties entered into the Agreement. The validity of the Agreement, for example, will necessarily be one of the issues decided in the Arbitration, will bind Coinmint in this action, and may preclude Coinmint's claims herein altogether. Proceeding with the Action while the Arbitration is pending not only risks inconsistent outcomes but also a tremendous waste of judicial resources.

### D. The issue of arbitrability is committed to the Arbitrators.

If, despite the above, there is any question of whether Reddy can invoke the arbitration clause as to Coinmint's claims in this case, or whether this Action is based upon issues referable to Arbitration, then those questions should be referred to arbitration. Because the Agreement provides for arbitration under the AAA Commercial Rules, it manifests the parties' intent that questions of arbitrability be decided by the arbitrator. *See Guidewire Software, Inc. v. Chookaszian*, No. 12-CV-03224-LHK, 2012 WL 5379589, at *4 (N.D. Cal. Oct. 31, 2012). Indeed, the Arbitration Clause explicitly references the AAA Commercial Rules. Hardin Decl. ¶ 3 ("arbitration administered by American Arbitration Association under the rules for commercial arbitration of the American Arbitration Association . . . ."). Accordingly, it is for the arbitrator to decide whether Coinmint's claims are referable to arbitrable.

## IV. CONCLUSION

For the reasons stated above, the Court should stay the Action pending Arbitration.

DATED: March 5, 2023                    **PERKINS COIE LLP**

By: */s/ David P. Chiappetta*
　　David P. Chiappetta
　　John R. Hardin, *pro hac vice forthcoming*
　　Jacob J. Taber, *pro hac vice forthcoming*
　　Lauren A. Trambley

Attorneys for Defendant
Sagar Reddy