**PERKINS COIE LLP**
John R. Hardin, *admitted pro hac vice*
JohnHardin@perkinscoie.com
500 N. Akard Street, Suite 3300
Dallas, Texas 75201
Telephone: 214.965.7700
Facsimile: 214.965.7799

Jacob J. Taber, *admitted pro hac vice*
JTaber@perkinscoie.com
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Telephone: 212.262.6900
Facsimile: 212.977.1649

David P. Chiappetta, Bar No. 172099
DChiappetta@perkinscoie.com
Lauren A. Trambley, Bar No. 340634
LTrambley@perkinscoie.com
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone: 415.344.7000
Facsimile: 415.344.7050

Attorneys for Defendant
Sagar Reddy

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| COINMINT, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>DX CORR DESIGN, INC., a California Corporation, SAGAR REDDY, an individual, ROBERT BLECK, an individual, JIM DENAUT, an individual, FRANK KINNEY, an individual, and DOES 1-40, inclusive,<br><br>    Defendants. | Case No. 23-cv-00599-RS<br><br>**SAGAR REDDY'S REPLY IN SUPPORT OF MOTION TO STAY THE ACTION PENDING ARBITRATION**<br><br>Date:       April 20, 2023<br>Time:      1:30 p.m. |

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ..................................................................................................................... 1

II. ARGUMENT ............................................................................................................................ 2

    A. Coinmint does not dispute that the action is rife with issues "referable to arbitration" under 9 U.S.C. § 3. ................................................................................. 3

    B. Under California law, this Court should apply equitable estoppel to permit Reddy to enforce the Arbitration Clause. ........................................................... 3

        1. Coinmint relies on the terms of the Agreement in asserting its claims against Defendants. ....................................................................... 4

        2. Coinmint's claims are "intimately founded in and intertwined with" the underlying contract. ................................................................. 5

        3. Coinmint alleges substantially interdependent and concerted misconduct by the non-signatory and another signatory, and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement ............................................................................................. 7

    C. Any question of enforceability is committed to the Arbitrators but, even it were not, Coinmint has waived any argument that the Arbitration Clause is unenforceable. ............................................................................................... 8

    D. The issue of arbitrability is committed to the Arbitrators. ................................. 10

III. CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Collier v. New York,*
    2007 WL 9734356 (C.D. Cal. Nov. 6, 2007)........................................................................ 10

*Goldman v. KPMG,*
    173 Cal. App. 4th 209 (2009) ............................................................................................ 6, 7, 8

*Guidewire Software, Inc. v. Chookaszian,*
    2012 WL 5379589 (N.D. Cal. Oct. 31, 2012)....................................................................... 11

*In re Pac. Fertility Ctr. Litig.,*
    814 F. App'x 206 (9th Cir. 2020) ........................................................................................... 4

*Kramer v. Toyota Motor Corp.,*
    705 F.3d 1122 (9th Cir. 2013)............................................................................................ 4, 9

*Madrigal v. New Cingular Wireless Servs., Inc.,*
    2009 WL 2513478 (E.D. Cal. Aug. 17, 2009)...................................................................... 11

*Metalclad Corp. v. Ventana Env't Org. P'ship,*
    109 Cal. App. 4th 1705 (2003) ............................................................................................ 7, 8

*Nghiem v. NEC Elec., Inc.,*
    25 F.3d 1437 (9th Cir. 1994)................................................................................................ 10

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
    388 U.S. 395 (1967).............................................................................................................. 9

*Stewart v. Blue Cross/Blue Shield of NV,*
    81 F. App'x 904 (9th Cir. 2003)........................................................................................... 10

*STM Atl. N.V. v. Dong Yin Dev. Holdings Ltd,*
    2019 WL 2417625 (C.D. Cal. Feb. 15, 2019).............................................................. 3, 5, 7

*Turtle Ridge Media Grp., Inc. v. Pac. Bell Directory,*
    140 Cal. App. 4th 828 (2006) ................................................................................................ 7

**STATUTES**

9 U.S.C. § 3 ................................................................................................................................ 1, 3, 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This Court must answer one, straightforward question to resolve this Motion: whether this Action is based "upon *any* issue referable to arbitration." 9 U.S.C. § 3 (emphasis added). Because that answer is "yes," 9 U.S.C. § 3 requires that the Court stay the action pending the Arbitration[1] initiated by Coinmint that is already proceeding before the American Arbitration Association. Coinmint fails to refute that there is "any issue" in this action that is referable to arbitration. In fact, Coinmint's opposition brief ("Opposition") does the inverse—demonstrating once again that the facts and issues in this Action are identical to those that are the subject of the Arbitration. By showcasing that the Arbitration will resolve key factual issues that Coinmint raises in this Action, including Coinmint's allegation that non-party Katena conspired with the named defendants to defraud Coinmint, Coinmint effectively highlights that the central issues in this Action are clearly "referable to arbitration." Indeed, Coinmint spends *ten pages* of its Opposition reciting confidential testimony and documents produced in the related Arbitration.[2] The only thing Coinmint achieves through its factual recitation is demonstrating unequivocally that this Action is intimately founded in and intertwined with the Agreement containing the arbitration clause.

Coinmint also repeatedly mischaracterizes Reddy's Motion by suggesting that Reddy is seeking to compel arbitration of Coinmint's claims in this action. *See* Opp. at 4:4–5 (misstating that Reddy requests that "the claims against all defendants should be . . . referred to binding arbitration"); *id.* 4:13–15 (misstating that Reddy is requesting that the Court require defendants to "proceed to arbitration."). But Reddy is not requesting that the Court refer *anyone's* claims to arbitration. Reddy is simply requesting that the Court apply the plain language of 9 U.S.C. § 3 to stay this action pending the resolution of the same Arbitration that Coinmint repeatedly references in its Opposition. Having filed that Arbitration and asked that the arbitrators resolve the same

---

[1] Capitalized terms have the same meaning as those set forth in the Motion (ECF No. 8).
[2] Much of Coinmint's Opposition comprises a distorted telling of the underlying factual issues to be determined in the Arbitration. In fact, pages 8 to 17 are largely a rehash of a Motion that Coinmint made in the Arbitration, which was denied by the Arbitrators.

issues it now seeks to put before this Court, Coinmint cannot be heard to complain about the fact that the AAA Arbitrators will actually be determining them. Meanwhile, the Defendants here—including those who have yet to be served—will not be prejudiced by a stay.

This Court should also reject Coinmint's ingenuine attempt to avoid a stay by asserting that the Court must first determine whether the Agreement itself was induced by fraud. This determination plainly falls within the jurisdiction of the arbitration panel notwithstanding Coinmint's misreading of the relevant caselaw, and this exact issue will be determined in the Arbitration here *as demanded by Coinmint* in its demand for arbitration filed one year ago. In any event, Coinmint has waived any argument that the Arbitration Clause is unenforceable: it invoked that clause in bringing the Arbitration against Katena a year ago, and has never once challenged its propriety.

In sum, many if not all of the issues raised in Coinmint's Complaint are inextricably intertwined with and hinge upon the Agreement, and the Opposition only reinforces that fact. The most efficient course of action, and the one that is required under the FAA, is for this Court to stay this Action pending the Arbitration, which is set to conclude its evidentiary hearing in September, and where these issues are already set to be determined.

**II.   ARGUMENT**

Coinmint's Opposition does not—because it cannot—refute that "any issue" in this action is referable to arbitration. Instead, Coinmint focuses on whether this Court should permit Reddy to invoke the Arbitration Clause through the doctrine of equitable estoppel. But in that argument, Coinmint misapplies the equitable estoppel test and simply ignores case law from Reddy's Motion which shows that courts permit non-signatories to invoke arbitration clauses in instances such as this one, where the plaintiff's claims are "intimately founded in and intertwined with" the agreement containing the arbitration clause. Courts have similarly allowed non-signatories to enforce an arbitration clause where, as here, a plaintiff alleges that defendant non-signatories have conspired with signatories to induce the plaintiff to enter a contract.

This Court should allow Reddy to enforce the Arbitration Clause against Coinmint and stay this action pending the Arbitration.

**A.    Coinmint does not dispute that the action is rife with issues "referable to arbitration" under 9 U.S.C. § 3.**

There need be only one issue "referable to arbitration" in this Action to mandate a stay. *See* 9 U.S.C. § 3; *see also STM Atl. N.V. v. Dong Yin Dev. Holdings Ltd*., 2019 WL 2417625, at *3 (C.D. Cal. Feb. 15, 2019) ("The statute is clear: where a suit is upon an issue 'referable to arbitration' under an arbitration agreement, a stay of such suit is mandatory."). Coinmint does not even attempt to argue that this is not the case. In fact, the factual recitation in Coinmint's Opposition Brief, together with the allegations of the Complaint itself, make clear that the Action is rife with issues that fall within the scope of the Arbitration Clause in the Agreement, which extends to any "controversy, difference or claim arising out of or relating to this Agreement, including the existence, validity, interpretation, performance, breach or termination hereof or any dispute regarding non-contractual obligations arising out of or relating to this Agreement…" Hardin Decl. (ECF No. 9) ¶ 3.

**B.    Under California law, this Court should apply equitable estoppel to permit Reddy to enforce the Arbitration Clause.**

Unable to assert a plausible argument that all (or for that matter, any) of the issues in the Action fall outside the scope of the Arbitration Clause, Coinmint instead devotes its Opposition to contending that the Court should not invoke equitable estoppel to permit Reddy to enforce it. In doing so, Coinmint distorts the equitable estoppel test and refuses to address on-point case law—including cases where courts invoked equitable estoppel to permit a non-signatory to enforce an arbitration clause when a plaintiff alleged that signatories and non-signatories conspired against the plaintiff as Coinmint does here. (Mot. at 8–11).

Coinmint mischaracterizes California law on equitable estoppel by asserting that it applies only if Coinmint is seeking through this action to enforce a specific obligation of the Agreement against defendants. In asserting this argument, Coinmint disregards that there are *three* different

circumstances in which equitable estoppel can apply to a non-signatory's enforcement of an arbitration clause against a signatory. As detailed in Reddy's motion, a defendant may rely on equitable estoppel under *any* of the following circumstances:

- Plaintiff relies on the terms of the agreement in asserting its claims against the nonsignatory; *or*
- Plaintiff's claims are "intimately founded in and intertwined with" the underlying contract, *or*
- Plaintiff alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory, and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*See In re Pac. Fertility Ctr. Litig.,* 814 F. App'x 206, 208-09 (9th Cir. 2020) (quoting *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013)) (citations omitted).

By focusing its Opposition solely on whether its claims rely on the terms of the Agreement (in fact they do), Coinmint effectively ignores the other two circumstances and asks this Court to do the same. But California case law is clear that the Court may invoke equitable estoppel if ***any*** of the above circumstances exist. In any event, all three exist here.

### 1. Coinmint relies on the terms of the Agreement in asserting its claims against Defendants.

Coinmint asserts that it does not rely upon the terms of the Agreement in asserting its claims against the Defendants since "[n]one of Coinmint's claims against these defendants seeks in any way to impose upon them a duty to supply mining rigs to Coinmint or hold them liable in damages for their failure to do so." Opp. at 20:11–14. However, this first element is *not* limited to circumstances when a plaintiff seeks specific performance of the underlying contract. Among other situations, courts have held that, when a plaintiff alleges that it was fraudulently induced[3] into entering a contract, and that it suffered damage as the result of having complied with the

---

[3] Although entirely unnecessary to resolve the legal issue presented to the Court, Coinmint spends much time alleging that it was "fraudulently induced" into signing the Agreement. To be clear, it was not, and the documents produced in the Arbitration tell a very different story. But, because that issue is being decided in the Arbitration and the AAA Panel determining those issues have entered various orders about the process and privacy of the Arbitration, Mr. Reddy reserves any discussion of the merits until a more appropriate time.

-4-

terms of the contract (here, making payments under the contract), its fraud-based claims rely on the terms of the contract, trigger equitable estoppel, and present an issue referable to arbitration.

For example, the court in *STM Atlantic N.V. v. Dong Yin Development Holdings Ltd.*, 2019 WL 2417625 (C.D. Cal. Feb. 15, 2019) determined that the plaintiffs' allegations met requirements of the equitable estoppel test where the plaintiffs there, like Coinmint here, alleged a scheme amongst the defendants which allegedly led to the plaintiffs entering into the "culminating contracts" which contained arbitration clauses. *Id.* at *2, *5–6. Just like here, there was an arbitration pending between the plaintiff and a signatory at the time that the *STM* court resolved the dispute. *Id.* at *2. The court rejected arguments similar to the ones Coinmint makes, holding: "Plaintiffs explicitly allege to have signed the SHA in reliance on the false representations of [the non-signatory] . . . Inasmuch as Plaintiffs wield such reliance as an element of their fraud-based claims, those claims flow from an assertion of SHA-based contract rights and therefore allow [the non-signatory] to invoke equitable estoppel." *Id.* at *5. The court on similar grounds rejected plaintiffs' contention that its claims did not arise from the contract but rather "from fraud antecedent to the contract." *Id.* at *6. The same analysis applies to the instant Complaint.

The *STM* court also held that an additional basis for finding that the plaintiff's fraud-based claims relied on the terms of the agreement was because these claims could not have been brought without the *existence* of the agreement. *Id.* at *5. The same is true here, providing yet another reason why equitable estoppel is appropriate. Coinmint seeks to hold Reddy (and other Defendants) liable for having fraudulently caused the Agreement to come into existence and seeks as damages the money it paid to Katena (not to Reddy) under the Agreement. If Coinmint had not entered into the agreement with Katena, it would have no claim against Reddy.

    **2.**    **Coinmint's claims are "intimately founded in and intertwined with" the underlying contract.**

Coinmint cannot seriously deny that its claims against Reddy and other defendants are "intimately founded in and intertwined with" the Agreement:

> **Compl. ¶ 42:** "By engaging in the conduct alleged in this Complaint, Coinmint was fraudulently induced by Defendants to sign the [Agreement] with Katena and to make deposits of over $23 million."
>
> *Id.* ¶¶ **45, 47-48, 52:** "Defendants . . . conveyed these representations to Coinmint with the intent to induce Coinmint to rely on them so that Coinmint would sign the [Agreement] and advance deposit payments to Katena. . . . Coinmint actually relied on Katena's representations because the company would not have entered into the [Agreement] absent Katena's representations," and "Coinmint therefore requests a judicial determination rescinding the [Agreement] and declaring them void as they were executed as a result of Defendants' fraudulent inducement and awarding monetary damages in the amount of $23 million plus interests, costs, punitive damages, and attorney fees."
>
> *Id.* ¶¶ **61, 63:** "[Defendants'] aiding and abetting Denaut's, Kinney's, and DOE 1's breaches of their fiduciary duties to Coinmint and DX Corr and Reddy's aiding and abetting Bleck's breach of his fiduciary duty to Coinmint caused Coinmint to suffer damages in an amount according to proof but not less than $23 million."
>
> *Id.* ¶¶ **77, 80:** "Defendants had knowledge of, and agreed to conspire with Katena for the purpose of defrauding and causing injury to Coinmint. . . . By engaging in the conduct described hereinabove, DX Corr, Reddy, Bleck, DeNaut, Kinney, and DOE 1 acted pursuant to their respective conspiracies with Katena and each other, resulting in injury to Coinmint in an amount according to proof but not less than $23 million."
>
> *Id.* ¶ **85, 87:** "DX Corr and Reddy intended to interfere with that contract by pressuring and controlling Bleck . . . As a result, DX Corr and Reddy caused Coinmint to suffer damages in an amount according to proof but not less than $23 million."
>
> *Id.* ¶ **90:** "Defendants have committed acts of unfair competition, as defined by Business and Professions Code section 17200, by engaging in the following: participating in Katena's fraudulent scheme to induce Coinmint's execution of the [Agreement] and payment of over $23 million to Katena, including facilitating Katena's fraudulent representations that: (a) Katena had developed a patented microchip and had the ability to produce the thousands of miners it agreed to deliver to Coinmint; (b) the miners that Coinmint would purchase from Katena were designed by Katena and would be manufactured by the world's leading semiconductor manufacturer, TSMC; (c) Katena had significant clients who had entered into contracts similar to those under discussion with Coinmint; (d) Katena was financed by a large, nationally recognized investment firm, and had the resources to manufacture and deliver thousands of miners to Coinmint; and (e) Katena would use the deposit payment to fulfill its obligations under the [Agreement]."

Reddy need say nothing more to show Coinmint's claims are "intimately founded in and intertwined with" the underlying contract. The Complaint speaks for itself.

Coinmint nevertheless spends one-third of the argument section of its Opposition cherry-picking language from *Goldman v. KPMG*, 173 Cal. App. 4th 209 (2009) to argue by analogy that Reddy's claims are not intimately founded in and intertwined with the Agreement. But Coinmint fails to address the facts of *Goldman*, which drove its holding and are inapposite to those before this Court. The *Goldman* plaintiffs did not cite to or otherwise mention the agreements

-6-

containing the arbitration clauses <u>anywhere</u> in their complaints.  This was critical to the *Goldman* court's decision, which predicated its holding on the fact that "[t]he complaints do not rely on or use any terms or obligations of the operating agreements as a foundation for their claims; indeed, the operating agreements *are not even mentioned in the complaints*."  *Goldman*, 173 Cal. App. 4th at 218 (emphasis added).

By contrast, Coinmint's Complaint is predicated upon the very existence of the Agreement and is replete with references to it.  While the claims in *Goldman* may not have been intimately founded in and intertwined with the agreements at issue in that case, this is certainly not the case with respect to Coinmint's claims here.

> **3.  Coinmint alleges substantially interdependent and concerted misconduct by the non-signatory and another signatory, and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement**

In his Opening Brief (ECF No. 8 at 10-11), Reddy cited California case law establishing that a court may apply equitable estoppel in circumstances like this one, where the plaintiff's fraud claim is "intimately founded in and intertwined with" the agreement containing the arbitration clause, and where a plaintiff alleges that a non-signatory defendant schemed with signatories to induce a plaintiff to enter into the agreement containing an arbitration clause.  *See, e.g., Metalclad Corp. v. Ventana Env't Org. P'ship,* 109 Cal. App. 4th 1705, 1717, 1719 (2003); *STM Atl. N.V.*, 2019 WL 2417625, at *3 (discussed supra); *see also Turtle Ridge Media Grp., Inc. v. Pac. Bell Directory*, 140 Cal. App. 4th 828, 833-35 (2006) (equitable estoppel applied to plaintiff's fraud claim against non-signatory which was intertwined with agreement subject to arbitration).  For example, in *Metalclad*, the court held that equitable estoppel applies where a plaintiff alleges that a signatory and non-signatory "colluded to obtain [a business] by a fraudulent contract" because such claims "cannot help but be 'intimately founded in and intertwined with that contract, which [plaintiff] signed."  109 Cal. App. 4th at 1717–18.  As was the case for plaintiffs in *Metalclad*, Coinmint must not be permitted to "avoid arbitration by suing nonsignatory defendants for claims that are 'based on the same facts and are inherently

inseparable' from arbitrable claims against signatory defendants." *Id.* at 1713. Coinmint's response to this is simply to disregard these authorities as if they do not exist.

Instead, Coinmint goes back to the well, asserting that the *Goldman* court held that allegations of fraud between a signatory and non-signatory are insufficient to support a finding of equitable estoppel. (Opp. at 22:4–23:4). But that is not the holding of *Goldman*, which only rejected the defendants' broad policy argument that "a plaintiff's allegations of concerted misconduct by signatories and nonsignatories, *standing alone*, is a proper basis for applying equitable estoppel." *Goldman*, 173 Cal. App. 4th at 233 (emphasis added). Here, Reddy is not arguing that, "standing alone," the fact that Coinmint alleges Katena and Reddy conspired is sufficient to invoke equitable estoppel. Rather, the entirety of Coinmint's case is predicated upon allegations that Katena (a signatory) and Defendants (nonsignatories) conspired to induce Coinmint to undertake the obligations imposed upon it by the Agreement. This is exactly the "interdependent and concerted misconduct" between a signatory and non-signatory that gives rise to the application of equitable estoppel.[4] This is in stark contrast to *Goldman*, where the agreements containing the arbitration provisions were "merely a procedural and collateral step in the creation of the fraudulent tax shelters" at issue in that case. *Goldman*, 173 Cal. App. 4th at 218.

### C. Any question of enforceability is committed to the Arbitrators but, even it were not, Coinmint has waived any argument that the Arbitration Clause is unenforceable.

Faced with clear law showing that Reddy may invoke the Arbitration Clause and that the Court must stay the action, Coinmint makes a last-gasp attempt avoid a stay by contending (as it does in the Arbitration) that the entire Agreement is unenforceable. (Opp. at 17–19). Coinmint argues that, when a defendant attempts to compel arbitration, the plaintiff opposing arbitration is entitled to assert any defenses it may have to contract formation generally, including an argument

---

[4] As discussed above, Coinmint attempts repeatedly to conflate the various circumstances in which equitable estoppel applies. Where the allegations of the complaint allege "interdependent and concerted misconduct" that is "bounded in or intimately connected with the obligations of the underlying agreement," as here (the third method of establishing equitable estoppel), there is no independent requirement that the plaintiff rely on the terms of the agreement in asserting its claims against the non-signatory (the first method of establishing equitable estoppel).

-8-

that the contract in its entirety is unenforceable due to fraud in the inducement, citing *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013). (Opp. at 18-19). Setting aside that Reddy is not moving to compel arbitration, nothing in *Kramer* stands for the proposition for which Coinmint has erroneously cited it; nowhere in the case is there anything that suggests this Court must resolve whether the Agreement was fraudulently induced as part of a motion to stay pending arbitration. Indeed, the United States Supreme Court has expressly held to the contrary in relation to a motion to stay pending arbitration under 9 U.S.C. § 3—the exact procedural posture as is presented here—ruling that fraud in the inducement is to be determined by the arbitrator unless the fraud goes only to the arbitration clause itself and not the contract as a whole. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 388 (1967) ("[T]he statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally . . . We hold, therefore, that, in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate."). Accordingly, Coinmint's argument that the Court must decide whether the Agreement is unenforceable now, rather than staying the Action pending arbitration, is disingenuous and unsupported by any authority.[5]

But even if Coinmint were correct in contending that the Court must resolve the fraud in the inducement claim (it is not), Coinmint has waived any argument that the Arbitration Clause is unenforceable. For the past year, Coinmint has been actively engaged in the Arbitration *that it commenced* in reliance on the Arbitration Clause. Coinmint in fact alleges in Paragraph 10 of the Complaint and putative First Amended Complaint that "Coinmint is presently pursuing its claims against Katena in arbitration pursuant to the arbitration clause in the contract." In doing so, Coinmint has made a judicial admission that the Agreement contains an enforceable arbitration clause, and it is estopped from now disavowing that clause. While Coinmint suggests to the Court that it has only recently discovered the purported fraud, seeking to excuse the fact that it

---

[5] It appears that Coinmint's unsupported argument on this point was intended to serve as justification for its inclusion of pages of unsupported allegations that are wholly irrelevant to this motion. While Reddy, of course, has responses to the unwarranted allegations made against him, he (unlike Coinmint) will not take up the Court's time by reciting immaterial facts.

has been arbitrating its case in accordance with the Arbitration Clause, Coinmint asserted a fraudulent inducement claim *in the Arbitration* in April 2022, and also sought rescission of the Agreement, just as it has done here.  Hardin Decl. (ECF No. 9) ¶ 4.  Thus, Coinmint misleads the Court in suggesting that it is just, for the first time, asserting this claim.  (Opp. at 21 n.8 ("Coinmint did not assert that [claim] against Katena when the arbitration commenced because the documents evidencing that fraud were not provided to Coinmint until after discovery was nearly completed in the arbitration.")).

Ninth Circuit law is well-settled that a party who initially requested arbitration (as Coinmint has done here) has "waived the right to challenge the enforceability of the arbitration provision." *Stewart v. Blue Cross/Blue Shield of NV*, 81 F. App'x 904, 905 (9th Cir. 2003). "Voluntary initiation of [an] arbitration can be interpreted as a waiver of any objection [a party] may have had over the authority of the arbitrator" (*Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994)), even where the plaintiff alleges a claim of fraud (*Collier v. New York,* No. CV 06-02569 MMM (MANx), 2007 WL 9734356, at *2, *5 (C.D. Cal. Nov. 6, 2007)).  Here, Coinmint not only invoked the arbitration clause by filing the arbitration in the first instance, but then *continued to arbitrate a fraudulent inducement claim* for a year without objecting to the enforceability of the arbitration clause.  Coinmint cannot now turn around and rely on a fraud claim to dispute the arbitrability of this dispute; it has waived any right to do so.

### D. The issue of arbitrability is committed to the Arbitrators.

Although Coinmint's Opposition mischaracterizes Reddy's Motion as a motion to compel arbitration, it fails to address federal statutory law and Ninth Circuit case law regarding arbitrability.  Rule 7 of the AAA commercial arbitration rules provides that: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Rule R-7(a).  "Numerous courts have examined the language in Rule 7 and concluded that, when incorporated into an arbitration agreement, it clearly and unmistakably evidences the parties' intent to arbitrate the scope of the arbitration agreement, *i.e.,* to arbitrate whether a claim or claims fall(s) within the scope of the

arbitration agreement." *Madrigal v. New Cingular Wireless Servs., Inc.*, 2009 WL 2513478, at *5 (E.D. Cal. Aug. 17, 2009) (collecting cases).

The Arbitration Clause explicitly references the AAA Commercial Rules. Hardin Decl. ¶ 3 ("arbitration administered by American Arbitration Association under the rules for commercial arbitration of the American Arbitration Association . . . ."). If, despite the above, there is any question of whether Reddy can invoke the arbitration clause as to Coinmint's claims in this case, or whether this Action is based upon issues referable to Arbitration, then those questions should be referred to arbitration. Because the Agreement provides for arbitration under the AAA Commercial Rules, it manifests the parties' intent that questions of arbitrability be decided by the arbitrator. *See Guidewire Software, Inc. v. Chookaszian*, 2012 WL 5379589, at *4 (N.D. Cal. Oct. 31, 2012).

## III.  CONCLUSION

For the reasons stated above, the Court should stay the Action pending the Arbitration.

DATED: March 27, 2023

**PERKINS COIE LLP**

By: */s/ David P. Chiappetta*
David P. Chiappetta
John R. Hardin, *pro hac vice forthcoming*
Jacob J. Taber, *pro hac vice forthcoming*
Lauren A. Trambley

Attorneys for Defendant
Sagar Reddy