# EXHIBIT A

**KOBRE & KIM LLP**
Daniel Zaheer (State Bar No. 237118)
150 California Street, 19th Floor
San Francisco, California 94111
Tel.:    +1 415 582 4800
Fax.:    +1 415 582 4811
Email: daniel.zaheer@kobrekim.com

Steven G. Kobre (*pro hac vice* forthcoming)
Benjamin Sirota (*pro hac vice* forthcoming)
Caroline Rivera (*pro hac vice* forthcoming)
800 Third Avenue
New York, New York 10022
Tel.:    +1 212 488 1200
Fax.:    +1 212 488 1220
Email: steven.kobre@kobrekim.com
         benjamin.sirota@kobrekim.com
         caroline.rivera@kobrekim.com

*Attorneys for Plaintiff Jim DeNaut*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIM DENAUT,<br><br>                    Plaintiff,<br><br>          v.<br><br><br>FLETCHER C. ALFORD, ROBERT A. LEMUS, COINMINT, LLC, and RANDALL M. FORET<br><br>                    Defendants. | Case No. 24-cv-00145<br><br>**COMPLAINT**<br><br>Judge:<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Jim DeNaut files this Complaint against Defendants Fletcher Alford, Robert Lemus, Coinmint, LLC ("Coinmint") and Randall Foret, alleging as follows:

**INTRODUCTION**

1.       This is an action to recover damages and expenses Plaintiff Jim DeNaut was forced to incur to rectify flagrant breaches of attorney-client duties committed by his former lawyers from Gordon Rees Scully Mansukhani, LLP ("Gordon Rees"), led by San Francisco-based partner Fletcher Alford and Houston-based partner Robert Lemus.  These breaches were aided and abetted by Defendants Coinmint and Coinmint's General Counsel, Randall Foret.  As explained below, the key facts underpinning Mr. DeNaut's claims here have already been found against Defendants by Magistrate Judge S. Dave Vatti of the United States District Court for the District of Connecticut, after a two-day evidentiary hearing in which the Court rejected as not credible the sworn testimony of both Mr. Alford and Mr. Foret.  *See* Exhibit A (Order, *Katena Computing Techs., Inc. v. Jim DeNaut*, No. 23-mc-48, Dkt. No. 103 (D. Conn. Oct. 4, 2023)). Notwithstanding this ruling, Defendants have ignored Mr. DeNaut's attempts to resolve the issue of his damages, requiring further court intervention.

2.       In 2021, Mr. DeNaut, a professional investor, spent several months evaluating a potential investment and/or officer role with Coinmint, a cryptocurrency mining operation.  The same year, Coinmint entered a contract with Katena Computing Technologies, Inc. ("Katena"), under which the latter was to manufacture cryptocurrency mining equipment for Coinmint.  By 2022, the relationship between Coinmint and Katena had broken down, and Coinmint commenced arbitration (the "Arbitration") against Katena, sited in San Francisco, California.  *Coinmint, LLC v. Katena Computing Techs., Inc.*, AAA Case No. 01-22-0001-7627.  As of the date of this Complaint, the Arbitration remains ongoing.

3.       In late 2022, Coinmint's General Counsel, Mr. Foret, requested that Mr. DeNaut speak with Coinmint's lawyers in the Arbitration from Gordon Rees, and a call was scheduled for January 6, 2023 (the "January 6 call").  Mr. DeNaut, Mr. Alford, Mr. Lemus, and Mr. Foret attended the January 6 call.  At the outset of the January 6 call, Fletcher Alford of Gordon Rees told Mr. DeNaut, *inter alia*, that Mr. DeNaut could be helpful to Coinmint in the Arbitration, and

that Gordon Rees would represent Mr. DeNaut as a testifying witness in the Arbitration. Mr. DeNaut agreed to Mr. Alford's proposal. At that moment, an attorney-client relationship was formed, obliging Mr. Alford and Mr. Lemus to maintain their duty of loyalty (among other duties) to Mr. DeNaut. These duties likewise prohibited Mr. Alford and Mr. Lemus from acting adversely to Mr. DeNaut in the same or substantially similar matter as the Arbitration in which Mr. Alford had promised to represent him.

4.      Within weeks, Mr. Alford and Mr. Lemus radically reversed course, launching an attack on Mr. DeNaut (their then-client) under the direction of their other client Coinmint, and Coinmint's General Counsel Randall Foret. Based on an email produced in discovery in the Arbitration, Defendants apparently concluded (wrongly) that Mr. DeNaut was adverse to Coinmint. At that point, Defendants could have spoken to Mr. DeNaut, and Mr. DeNaut would have corrected their misimpression. Mr. Alford and Mr. Lemus also could have withdrawn from representing Mr. DeNaut and Coinmint, as lawyers frequently do when a perceived conflict between clients develops. Instead, Mr. Alford and Mr. Lemus, at the direction of Coinmint and Mr. Foret, simply decided to jettison their most basic obligations to Mr. DeNaut.

5.      First, in February 2023, Mr. Alford and Mr. Lemus had a process server serve Mr. DeNaut at his home in Connecticut with a subpoena to testify in the Arbitration. Then, days later, Mr. Alford had a process server serve Mr. DeNaut with a California state court lawsuit accusing Mr. DeNaut, baselessly, of engaging in a conspiracy against Coinmint, based on the same dispute (*i.e.*, the Coinmint-Katena contract dispute) being litigated in the Arbitration. In other words, Mr. Alford, acting on behalf of Coinmint and Mr. Foret, *sued his own client* in the same dispute in which he had promised to represent him—thereby violating one of the most fundamental duties a lawyer owes his client. That lawsuit against Mr. DeNaut was removed by one of the other defendants to this Court, where it is currently stayed pending the outcome of the Arbitration. *Coinmint, LLC v. DX Corr Design, Inc.*, No. 23-cv-599-RS, Dkt. No. 40 (N.D. Cal. April 24, 2023).

6.      In an effort to avoid unnecessary cost and litigation, Kobre & Kim LLP ("Kobre & Kim"), Mr. DeNaut's new counsel, repeatedly attempted to convince Mr. Alford and Mr.

Lemus (as well as Gordon Rees more broadly) that they could not be adverse to Mr. DeNaut, including that they were not permitted to examine him in the Arbitration. Mr. Alford, Mr. Lemus and Gordon Rees denied that they had any obligations to Mr. DeNaut. In the face of this persistent refusal to cure breaches of attorney-client duties, Mr. DeNaut was forced to expend considerable resources to protect his rights.

7. Ultimately, Kobre & Kim, on behalf of Mr. DeNaut, spent several months litigating the question of whether Gordon Rees was permitted to question Mr. DeNaut in the Arbitration, culminating in a two-day evidentiary hearing before Magistrate Judge S. Dave Vatti of the United States District Court for the District of Connecticut, on August 7 and 8, 2023 (the "Hearing"). The litigation took place in Connecticut because Mr. DeNaut had been summoned to testify in the Arbitration in Connecticut, where he resides.

8. At the Hearing, Mr. Alford and Mr. Foret falsely testified that Mr. Alford had never offered to represent Mr. DeNaut on January 6, 2023. In his Order dated October 4, 2023, Judge Vatti—having had the opportunity to observe Mr. Alford and Mr. Foret give live testimony under oath—rejected both of their versions of events. *E.g.*, Exhibit A at 17-19 ("The Court does not credit either Attorney Alford's testimony that he did not offer representation during the call or Foret's testimony that he did not 'recall' hearing such an offer."). As for Mr. DeNaut, Judge Vatti credited his testimony in its entirety, leading the Court to find that "Attorney Alford made an express offer of representation on January 6 that DeNaut accepted and upon which he relied." *Id*. at 19. Judge Vatti granted Mr. DeNaut's requested relief, ordering the disqualification of Gordon Rees from any involvement in the examination of Mr. DeNaut in the Arbitration. *Id*. at 32.

9. Finally forced to comply with the most basic of attorney-client obligations, Coinmint and Mr. Foret then hired replacement counsel to conduct an examination of Mr. DeNaut in the Arbitration in November 2023—an outcome that could have been accomplished many months prior without the need for litigation and its attendant cost.

10. As a direct result of the breaches by Mr. Alford and Mr. Lemus, aided and abetted by Coinmint and Mr. Foret, Mr. DeNaut was forced to spend considerable sums on attorneys' fees, in an effort to rectify Defendants' violations. Mr. DeNaut is entitled to recoupment of those

extensive damages, which could have been avoided entirely.  Mr. DeNaut is also entitled to punitive damages given the willfulness of Defendants' conduct in promising to provide legal representation for Mr. DeNaut and then knowingly violating the most vital duties owed to him.

**PARTIES**

11.     Plaintiff JIM DENAUT is, and at all times mentioned herein was, an individual residing in Greenwich, Connecticut.

12.     On information and belief, Defendant FLETCHER C. ALFORD is, and at all times mentioned herein was, an individual working out of Gordon Rees's San Francisco, California office and a resident of California.  Mr. Alford is an attorney licensed to practice law in the state of California (Bar Number 152314).

13.     On information and belief, Defendant ROBERT A. LEMUS is, and at all times mentioned herein was, an individual working out of Gordon Rees's Houston, Texas office and a resident of Texas.  Mr. Lemus is an attorney licensed to practice law in the state of Texas (Bar Number 24052225).

14.     On information and belief, Defendant COINMINT, LLC is, and at all times mentioned herein was, a limited liability company organized under the laws of Puerto Rico with its principal place of business located in Dorado, Puerto Rico.

15.     On information and belief, Defendant RANDALL M. FORET is, and at all times mentioned herein was, an individual residing in Magnolia, Texas.  Mr. Foret is an attorney licensed to practice law in the state of Texas (Bar Number 07256575).

**JURISDICTION**

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**VENUE**

17.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because, on information and belief, a substantial portion of the conduct giving rise to the liability alleged herein—the formation of an attorney-client relationship between Mr. Alford, Mr. Lemus, and Mr. DeNaut during a phone

call on January 6, 2023, and the subsequent violations of attorney-client duties described herein—occurred while Defendants were working or transacting business in the City and County of San Francisco, California. For example, Mr. Alford's office is located in Gordon Rees's San Francisco offices, and the Arbitration in which Mr. Alford had promised to represent Mr. DeNaut is sited in San Francisco, California.

**DIVISIONAL ASSIGNMENT**

18. This action arises in the City and County of San Francisco pursuant to Civil L.R. 3-2(c) because a substantial part of the events giving rise to the claims occurred within San Francisco County.

**FACTUAL BACKGROUND**

19. After a lengthy career as an executive on Wall Street, Plaintiff Jim DeNaut became a professional investor specializing in technology startups, including in the cryptocurrency space. In April 2021, Mr. DeNaut was introduced to Coinmint, a cryptocurrency mining company, by a mutual friend of his and Ashton Soniat, Coinmint's co-founder. Between April 2021 and early November 2021, Mr. DeNaut attempted to systematize Coinmint's financial records and professionalize its operations, with a view toward potentially taking an officer position at the company and/or making an investment in it. Mr. DeNaut did so without being compensated and without holding any formal role. In the end, Mr. DeNaut did not ever become an officer of Coinmint or invest in the company.

20. Early in his time at Coinmint, Mr. DeNaut learned that Coinmint planned to enter a contract with Katena. Under the contract, Katena was to manufacture and deliver cryptocurrency mining machines to Coinmint. Mr. DeNaut had no involvement negotiating, advising on, or reviewing due diligence for the Coinmint-Katena contract, as Mr. Soniat, Coinmint's founder, insisted that only Mr. Soniat and another Coinmint-affiliated individual could be involved in the process. Mr. DeNaut only saw the contract for the first time several weeks after it had been executed.

21. On November 3, 2021, negotiations between Mr. DeNaut and Coinmint regarding a possible role for Mr. DeNaut at Coinmint ended, and Mr. DeNaut departed Coinmint. Shortly

1  thereafter, Katena offered Mr. DeNaut an advisory role at Katena. After considering the proposal,

2  Mr. DeNaut rejected Katena's offer.

3       22.    With Coinmint failing to make payments and Katena not producing machines, the

4  contracted parties' relationship became strained. Randall Foret, Coinmint's General Counsel,

5  asked Mr. DeNaut in November 2021 if Mr. DeNaut could help broker a solution to the growing

6  dispute between Coinmint and Katena. Mr. DeNaut agreed and explored a number of options—

7  including Mr. DeNaut himself stepping into the shoes of Coinmint on the contract—but the

8  options proved unworkable. Failing to reach any compromise with Katena, in April 2022

9  Coinmint commenced the Arbitration, filing an arbitration demand against Katena for breach of

10  contract with the American Arbitration Association. *Coinmint, LLC v. Katena Computing Techs.,*

11  *Inc.*, AAA Case No. 01-22-0001-7627. On information and belief, Katena has asserted

12  counterclaims against Coinmint in the Arbitration. The Arbitration is still pending.

13       23.    By Spring 2022, Mr. DeNaut was no longer in touch with Katena. Mr. DeNaut

14  was, however, periodically in touch with Mr. Foret from Coinmint. For example, in June 2022,

15  with the Arbitration underway, Mr. Foret, on behalf of Coinmint, contacted Mr. DeNaut to set up

16  a call between Mr. DeNaut and Coinmint's lawyers at the time, Choate Hall & Stewart LLP

17  ("Choate"). The call went forward on June 27, 2022. Mr. DeNaut provided Choate general

18  background information on the companies and the dispute. Notably, the Choate lawyer with

19  whom Mr. DeNaut spoke did not offer to represent Mr. DeNaut and as such, Mr. DeNaut did not

20  form an impression that Choate would be acting as his lawyers in the Arbitration.

21       24.    By late 2022, Coinmint had replaced Choate as its counsel in the Arbitration with

22  Gordon Rees. In December 2022, Mr. Foret reached out to Mr. DeNaut again, to set up a call

23  between Mr. DeNaut and the new lawyers on the case from Gordon Rees, including Fletcher

24  Alford, a San Francisco-based, California-barred attorney, and Robert Lemus, a Houston-based,

25  Texas-barred attorney. The call was set up by Mr. Foret because Mr. Foret believed Mr. DeNaut

26  could be helpful to Coinmint in its case against Katena. The parties scheduled a call for January

27  6, 2023 at 3:30 PM ET.

28       25.    The January 6 call began with brief introductions; other than Mr. DeNaut, the

attendees were Gordon Rees partners Mr. Alford and Mr. Lemus, and Mr. Foret, Coinmint's General Counsel. Mr. Alford took the lead. Within the initial minutes of the call, Mr. Alford told Mr. DeNaut that:

    a) He was Coinmint's counsel in the Arbitration;

    b) Mr. DeNaut's testimony could be helpful to Coinmint in the Arbitration;

    c) Gordon Rees would like to represent Mr. DeNaut in the Arbitration, including preparing Mr. DeNaut for testimony and sitting next to him during it;

    d) Coinmint would pay for the representation, and reimburse Mr. DeNaut for any time and expenses; and

    e) He (Mr. Alford) would send Mr. DeNaut an engagement letter after the call.

26. Mr. DeNaut accepted Mr. Alford's offer of representation and stated that he looked forward to working with him.

27. After the above-described promises, the January 6 call continued for approximately an hour. In light of Mr. Alford's representations, Mr. DeNaut felt comfortable sharing with the lawyers he believed to be his counsel confidential information and concerns related to the dispute, including his understanding of the contract's execution and Coinmint's ability to pay per the terms of the contract. During the call, Mr. DeNaut solicited legal advice from Mr. Alford concerning how to navigate the above topics when he eventually testified in the Arbitration, and Mr. Alford provided such advice.

28. At the conclusion of the January 6 call, Mr. DeNaut asked Mr. Alford whether he would send Mr. DeNaut an engagement letter after the call. Mr. Alford confirmed that he would.

29. Approximately one hour after the January 6 call ended, Mr. DeNaut called Mr. Foret to confirm Mr. DeNaut's understanding that he would be working for Coinmint's benefit in preparing for the Arbitration. Mr. Foret agreed with that characterization and indicated that the call was helpful. Mr. Foret also asked Mr. DeNaut to search for, and forward, emails between Mr. DeNaut and Katena. Having received and accepted an offer by Gordon Rees to represent him earlier that day, Mr. DeNaut voluntarily forwarded Mr. Foret a variety of emails, consistent with his belief that he was acting to the benefit of Coinmint and that their interests were aligned.

30.     On February 15, 2023, Gordon Rees served Mr. DeNaut at his home in Greenwich, Connecticut with a summons to testify and produce documents in the Arbitration.  Listed on the Arbitration summons as the attorneys who had requested it were Mr. Alford and Mr. Lemus.  Five days later, on February 20, 2023, Gordon Rees served Mr. DeNaut at his home in Greenwich, Connecticut with a California Superior Court summons and lawsuit brought by Coinmint, naming Mr. DeNaut as a defendant.  That lawsuit alleged, falsely, that Mr. DeNaut was part of a conspiracy, along with individuals and entities linked to Katena, to defraud Coinmint.  *Coinmint, LLC v. DX Corr Design, Inc.,* No. 23-cv-410979 (Cal. Super. Ct. Jan. 26, 2023).  The complaint was signed by Mr. Alford on behalf of Coinmint.  Having received an Arbitration summons and a lawsuit against him from Gordon Rees, Mr. DeNaut now understood that the firm was acting adversely to him.  Mr. DeNaut retained Kobre & Kim to represent him in connection with the Arbitration and the California lawsuit.

31.     Upon learning of the January 6 call and Gordon Rees's promises to Mr. DeNaut, Kobre & Kim made several attempts to confer with Mr. Alford and Mr. Lemus (and Gordon Rees more broadly) regarding their inability to be adverse to Mr. DeNaut under bedrock ethical rules.  Mr. Alford, Mr. Lemus, and Gordon Rees steadfastly insisted that they were permitted to be adverse to Mr. DeNaut, including to question Mr. DeNaut in the Arbitration.  Communications between Kobre & Kim, Mr. Alford, Mr. Lemus, and others at Gordon Rees included the following:

a) On March 28, 2023, Kobre & Kim emailed Mr. Alford to discuss his agreement to be Mr. DeNaut's lawyer, before Kobre & Kim moved to seek relief in court.  The same day, via email, Mr. Alford denied that he had "agreed" to represent Mr. DeNaut or that he sent him an engagement letter (although he did not deny offering to send Mr. DeNaut an engagement letter).  Mr. Alford claimed that he viewed the January 6 call as "interviewing a witness – nothing more than that," and argued that he would "regard as frivolous and sanctionable any attempt . . . to litigate this issue."

b) On March 29, 2023, Kobre & Kim, restating its willingness to discuss the issue,

asked Mr. Alford to confirm that he and Gordon Rees would implement a litigation hold with respect to documents involving Mr. DeNaut. Mr. Alford did not respond.

    c) On April 4, 2023, Kobre & Kim copied Mr. Lemus into the email thread and sent both Mr. Alford and Mr. Lemus a document preservation notice. Kobre & Kim requested production of materials relating to Mr. DeNaut (including notes of the January 6 call), requested confirmation that the document preservation would be heeded, and asked for the notice be forwarded to Gordon Rees's General Counsel. Neither Mr. Alford nor Mr. Lemus responded.

    d) On April 7, 2023, Kobre & Kim wrote to Steven Bitter, Gordon Rees's General Counsel, asking him to confirm on behalf of Gordon Rees that the document hold had been put in place. Mr. Bitter did not respond.

    e) On April 14, 2023, Kobre & Kim wrote to Mr. Alford, asking him to confirm his agreement that Gordon Rees would cease pursuing the California action against Mr. DeNaut, and not bring further litigation relating to the same or substantially related issues against him. Again, Mr. Alford did not respond.

32. Via letter dated April 17, 2023, Kobre & Kim informed the arbitration panel of its position that Gordon Rees could not pursue its action against Mr. DeNaut in California nor question him in the Arbitration, due to Mr. DeNaut's status as Gordon Rees's former client in the same dispute.

33. On May 10, 2023, Mr. DeNaut filed an application for relief in Connecticut Superior Court seeking to disqualify Gordon Rees from questioning Mr. DeNaut in the Arbitration and to preclude Coinmint and Gordon Rees from using privileged information they procured from Mr. DeNaut during the January 6 call. The action filed by Mr. DeNaut was captioned *DeNaut v. Gordon Rees Scully Mansukhani, LLP*, No. FSTCV23-6061290-S (Conn. Super. Ct.).

34. On May 12, 2023, Katena initiated an action against Mr. DeNaut in the United States District Court for the District of Connecticut, filing a Petition to Enforce Arbitration Subpoena. The action was captioned *Katena Computing Techs., Inc. v. DeNaut*, No. 23-mc-48

(D. Conn.).  Coinmint moved to intervene in that action on May 16, 2023; the motion to intervene was granted on June 2, 2023.  Thereafter, the parties agreed to consolidate the central issue raised in both Connecticut proceedings—whether Gordon Rees should be permitted to question Mr. DeNaut in the Arbitration[1]—for decision by the U.S. District Court for the District of Connecticut, with Magistrate Judge S. Dave Vatti presiding.

35.     The District Court in Connecticut scheduled expedited discovery and an evidentiary hearing to start on August 7, 2023.  During the discovery phase, a number of documents produced by Coinmint and Gordon Rees corroborated that Mr. Alford had agreed to represent Mr. DeNaut, and contradicted Mr. Alford's assertion that he had never done so.  For example:

a) On December 28, 2022, Mr. Alford emailed his Gordon Rees colleagues and Mr. Foret reporting that Gordon Rees had told Katena's counsel: "***we can now confirm we represent DeNaut*** and that, to the extent he ends up being a PMK [Person Most Knowledgeable] deponent, we will produce him on a mutually-agreeable date." At this time, Mr. Alford had never spoken to Mr. DeNaut.  Exhibit A at 13, 17 (emphasis added).

b) On December 29, 2022, Katena's counsel, memorializing the discussion with Mr. Alford and Mr. Lemus from the day prior, stated that Mr. Alford and Mr. Lemus "told me that ***[Gordon Rees] represents Mr. DeNaut***[.]"  *Id*. at 17 (emphasis added).

c) A few hours after the January 6, 2023 call, Mr. Alford emailed the arbitration panel and stated, "***I can confirm that we can produce Mr. DeNaut in New York on a mutually-agreeable date the week of February 13***."  *Id*. at 15 (emphasis added).

36.     Discovery also shed light on why Defendants had turned against Mr. DeNaut.  On January 13, 2023, Mr. Alford emailed Katena's counsel in response to a request to confirm dates

_____

[1] Mr. DeNaut objected to appearing for testimony in the Arbitration only on the basis that his former lawyers, Gordon Rees, were going to question him; otherwise, Mr. DeNaut's position was always that he would voluntarily appear to testify in the Arbitration.

for Mr. DeNaut's deposition, stating, "The documents Katena recently produced reveal a previously unknown conflict of interest that precludes our firm from representing or producing for deposition [Mr.] DeNaut. . . . " Exhibit A at 15.  It appears that Defendants formed this view based on a November 5, 2021 email in which Katena had offered Mr. DeNaut a role as an advisor to Katena in exchange for an equity position.  *Id*. at 29.  None of the Defendants reached out to Mr. DeNaut at this time to discuss the November 5, 2021 email.  In fact, Mr. DeNaut had declined Katena's offer of an advisory relationship by phone, on November 9, 2021.  *Id*. at 9 n.8, 16, 30.

37.     During the August 7-8, 2023 evidentiary hearing, Mr. DeNaut testified that he agreed to Mr. Alford's offer of representation on January 6, 2023, that he relied upon that promise in sharing confidential information, that he was never adverse to Coinmint, and that he never accepted any advisory or other role for Katena.

38.     Forced to contend with the December 28, 2022 email where he had explicitly stated that he *was* representing Mr. DeNaut, Mr. Alford testified at the Hearing that it was only his "plan" going into the January 6, 2023 call to represent Mr. DeNaut.  According to Mr. Alford's sworn testimony, a "red flag" emerged during the January 6 call with Mr. DeNaut—Mr. DeNaut's raising of Coinmint's ability-to-pay issues—that Coinmint would have to "deal with" in the Arbitration, which led Mr. Alford to question whether he could represent Mr. DeNaut.  Mr. Alford testified that he never informed Mr. DeNaut of this supposed hesitation.  Mr. Alford explicitly denied that he had ever offered to represent Mr. DeNaut, during the January 6 call or otherwise.

39.     When asked about his email to the arbitration panel mere hours after the January 6 call—which conveyed no hesitation and instead confirmed that Gordon Rees would be producing Mr. DeNaut for deposition—Mr. Alford testified that he did not want to "give away [his] work product" or reveal his "evolving thinking on that subject."  Similarly, when asked why he had told opposing counsel in late December 2022 that Gordon Rees was representing Mr. DeNaut if the representation was supposedly only "planned," Mr. Alford testified that "nuance is dangerous in litigation with your opponent."

40.     Mr. Foret, Coinmint's General Counsel, also testified at the hearing.  After first stating that he "[did not] recall" the topic of representation ever coming up during the January 6

11

call, Mr. Foret amended his testimony to assert that Mr. Alford had explicitly told Mr. DeNaut on January 6 that Mr. Alford was Coinmint's lawyer but not Mr. DeNaut's.

41.     On October 4, 2023, Judge Vatti issued his ruling, finding in favor of Mr. DeNaut and ordering the disqualification of Gordon Rees from any involvement in examining Mr. DeNaut in the Arbitration.

42.     Judge Vatti's ruling credited Mr. DeNaut's testimony in all respects, including: that Mr. Alford had offered to represent DeNaut at the outset of the January 6 call and Mr. DeNaut had accepted that offer; that Mr. DeNaut shared confidential information regarding issues material to the Arbitration that he would not have shared without Mr. Alford's promises; and that Mr. DeNaut was never adverse to Coinmint.  Exhibit A at 16-17, 19, 24-25.

43.     In stark contrast to its credibility findings with respect to Mr. DeNaut, the Court found that Mr. Alford's testimony was not credible, including on the central issue of whether Mr. Alford had offered to represent Mr. DeNaut on January 6, 2023.  As Judge Vatti stated, "As for the [January 6] call itself, Alford's testimony that he refrained from offering representation because he learned of a potential conflict of interest is inconsistent with his conduct of the call.  Presumably an experienced litigator such as Alford, upon hearing a 'red flag' that made him 'dramatically' change his thinking about potential conflicts, would immediately have warned DeNaut that he represented Coinmint only, that he did not represent DeNaut, and that Coinmint was potentially adverse to DeNaut.  Alford admits that he gave no such warnings and, nonetheless, continued to elicit information from DeNaut for more than an hour.  The Court also does not credit Alford's testimony that the reason he emailed the panel later that day to confirm that he could produce DeNaut was because he did not want to reveal his 'work product . . . about our evolving thinking on the subject' until he had decided what to do.  [] It is implausible that an attorney who had just hit pause with respect to an intended representation would rush to create the opposite impression with the tribunal the very same day.  Instead, the most consistent interpretation of these events is that Alford obtained DeNaut's agreement to representation during the January 6 call, immediately notified the panel that he had the ability to produce DeNaut, and then changed his mind the next week after reviewing new documents."  Exhibit A at 18-19.

44.     The Court added that it was "concerning that Alford made a definitive statement to Katena's counsel 'confirming' that he represented DeNaut despite the fact that [at that point in time] they had never spoken[.]"  Exhibit A at 17.

45.     The Court similarly found Mr. Foret's testimony not credible, including his testimony that he did not recall Mr. Alford making an offer to Mr. DeNaut to represent him.  As to both Mr. Alford and Mr. Foret, the Court noted its "general skepticism about their version of these events."  Exhibit A at 17-18.

46.     Based in part on these credibility determinations, the Court found that Mr. DeNaut was a former client of Mr. Alford's, that the matter in which Mr. Alford was posed to cross-examine Mr. DeNaut (the Arbitration) was the same proceeding in which he had agreed to represent Mr. DeNaut, that Mr. DeNaut shared confidential information with Mr. Alford, and that Mr. Alford's conflicts were imputed to Gordon Rees.  Exhibit A at 22-28.

47.     Obtaining this result for Mr. DeNaut—an effort made necessary by Defendants' persistent unwillingness to have anyone other than Mr. Alford or Mr. Lemus cross-examine Mr. DeNaut in the Arbitration—came at a substantial cost.  Among other workstreams, Kobre & Kim:

    a)  Handled four court conferences before Judge Vatti;

    b)  Oversaw expedited discovery (which involved negotiating compliance with discovery requests, producing documents on behalf of Mr. DeNaut, and reviewing documents produced by Coinmint and Gordon Rees);

    c)  Drafted a pre-hearing brief;

    d)  Managed a two-day evidentiary hearing involving three witnesses and a number of complicated legal issues, including privilege determinations;

    e)  Drafted a post-hearing brief; and

    f)  Conducted oral argument following submission of post-hearing briefs.

48.     Mr. DeNaut would not have needed to incur these considerable expenses but for Defendants' misconduct and subsequent refusal to cure the violation of duties to Mr. DeNaut.

49.     The time allowed for appeal of Judge Vatti's Order lapsed as of November 6, 2023.

50.     On November 17, 2023, Mr. DeNaut testified in the Arbitration.   Coinmint

13

obtained new counsel solely for the purpose of questioning Mr. DeNaut, who capably conducted the examination. Defendants could have achieved this result more than half a year prior, without forcing Mr. DeNaut to spend substantial resources to protect the most basic of his rights.

51.    The lawsuit Coinmint/Gordon Rees brought against Mr. DeNaut was removed to the United States District Court for the Northern District of California on February 9, 2023. As of April 24, 2023, it is stayed pending the outcome of the Arbitration. *Coinmint, LLC v. DX Corr Design, Inc.*, No. 23-cv-599-RS, Dkt. No. 40 (N.D. Cal. April 24, 2023).

52.    Notwithstanding Judge Vatti's Order finding that Mr. DeNaut is a former client of Gordon Rees, Gordon Rees has not withdrawn from the lawsuit against Mr. DeNaut—which, again, covers the same dispute in which Mr. Alford had agreed to represent him. If and when the stay is lifted, Mr. DeNaut may be forced to incur even more expense to prevent Gordon Rees from continuing to represent Coinmint in the lawsuit against him. Defendants also have refused to engage on the issue of Mr. DeNaut's damages associated with their violations of his rights.

**FIRST CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTY**

**(Against Fletcher Alford and Robert Lemus)**

53.    The allegations of paragraphs 1 through 52 are re-alleged and incorporated herein by reference.

54.    Mr. Alford and Mr. Lemus owed Mr. DeNaut fiduciary duties because they were in an attorney-client relationship with Mr. DeNaut, as recognized by the U.S. District Court for the District of Connecticut in *Katena Computing Techs., Inc. v. DeNaut*, No. 23-mc-48. *See* Exhibit A. Mr. DeNaut formed an attorney-client relationship with Mr. Alford and Mr. Lemus on the January 6, 2023 call when: (1) Mr. Alford offered for Gordon Rees to represent Mr. DeNaut and Mr. DeNaut accepted; and (2) Mr. DeNaut shared confidential information with Mr. Alford and Mr. Lemus in order to solicit legal advice, and Mr. Alford provided such advice.

55.    Mr. Alford's duties as a California-barred attorney included to follow the California Rules of Professional Conduct and other authorities regulating attorney behavior in his dealings with Mr. DeNaut. These ethical and fiduciary duties included, but are not limited to,

14

California Rules of Professional Conduct:

     a) 1.9(a), prohibiting an attorney from acting adversely to a client it represented, in the same or a substantially related matter, absent informed written consent; and

     b) 1.9(c), 4.3(a), and 1.13(f), prohibiting an attorney from using information acquired by virtue of its representation of a former client in a manner that disadvantages the former client.

56. As a Texas-barred attorney, Mr. Lemus was bound by nearly identical ethical rules provided by, but not limited to, Texas Disciplinary Rules of Professional Conduct 1.05(b), 1.06(d) and (e), and 1.09(a) and (c).

57. The ethical and fiduciary duties Mr. Alford and Mr. Lemus were bound to follow are substantially the same in Connecticut, where Mr. DeNaut resides.

58. Mr. Alford and Mr. Lemus violated their fiduciary duties to Mr. DeNaut when Gordon Rees, at the direction of Mr. Alford and Mr. Lemus, served Mr. DeNaut (their then-client) with a summons to testify and produce documents in the Arbitration, and then thereafter, when they pursued an examination of Mr. DeNaut in the Arbitration. Mr. Alford and Mr. Lemus again violated their fiduciary duties to Mr. DeNaut when Gordon Rees, at the direction of Mr. Alford, served Mr. DeNaut with a California Superior Court summons and lawsuit on behalf of Coinmint, in which Mr. DeNaut was named as a defendant, and then thereafter, when they continued to prosecute that action against Mr. DeNaut.

59. Mr. Alford and Mr. Lemus acted with malice, with the intent to injure Mr. DeNaut, and with a conscious disregard of Mr. DeNaut's rights.

60. Mr. Alford's and Mr. Lemus's conduct was deliberate, and was the direct, proximate, and foreseeable cause of injury to Mr. DeNaut. Mr. DeNaut is therefore entitled to actual and punitive damages.

## SECOND CAUSE OF ACTION

### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

### (Against Coinmint, LLC and Randall Foret)

61. The allegations of paragraphs 1 through 60 are re-alleged and incorporated herein

15

by reference.

62.     Mr. Alford and Mr. Lemus owed Mr. DeNaut fiduciary duties because they were in an attorney-client relationship with Mr. DeNaut, as recognized by the U.S. District Court for the District of Connecticut in *Katena Computing Techs., Inc. v. DeNaut*, No. 23-mc-48.  *See* Exhibit A.  Mr. DeNaut formed an attorney-client relationship with Mr. Alford and Mr. Lemus on the January 6, 2023 call when: (1) Mr. Alford offered for Gordon Rees to represent Mr. DeNaut and Mr. DeNaut accepted; and (2) Mr. DeNaut shared confidential information with Mr. Alford and Mr. Lemus in order to solicit legal advice, and Mr. Alford provided such advice.

63.     Mr. Alford's duties as a California-barred attorney included to follow the California Rules of Professional Conduct and other authorities regulating attorney behavior in his dealings with Mr. DeNaut.  These ethical and fiduciary duties included, but are not limited to, California Rules of Professional Conduct:

    a)  1.9(a), prohibiting an attorney from acting adversely to a client it represented, in the same or a substantially related matter, absent informed written consent; and

    b)  1.9(c), 4.3(a), and 1.13(f), prohibiting an attorney from using information acquired by virtue of its representation of a former client in a manner that disadvantages the former client.

64.     As a Texas-barred attorney, Mr. Lemus was bound by nearly identical ethical rules provided by, but not limited to, Texas Disciplinary Rules of Professional Conduct 1.05(b), 1.06(d) and (e), and 1.09(a) and (c).

65.     The ethical and fiduciary duties Mr. Alford and Mr. Lemus were bound to follow are substantially the same in Connecticut, where Mr. DeNaut resides.

66.     Mr. Alford and Mr. Lemus violated their fiduciary duties to Mr. DeNaut when Gordon Rees, at the direction of Mr. Alford and Mr. Lemus, served Mr. DeNaut (their then-client) with a summons to testify and produce documents in the Arbitration, and then thereafter, when they pursued an examination of Mr. DeNaut in the Arbitration.  Mr. Alford and Mr. Lemus again violated their fiduciary duties to Mr. DeNaut when Gordon Rees, at the direction of Mr. Alford, served Mr. DeNaut with a California Superior Court summons and lawsuit on behalf of Coinmint,

16

in which Mr. DeNaut was named as a defendant, and then thereafter, when they continued to prosecute that action against Mr. DeNaut.

67. Coinmint and Mr. Foret knew that Mr. Alford and Mr. Lemus were breaching fiduciary duties owed to Mr. DeNaut when Gordon Rees served Mr. DeNaut with a summons to testify and produce documents in the Arbitration, and then thereafter, when they pursued an examination of Mr. DeNaut in the Arbitration. Coinmint and Mr. Foret also knew that Mr. Alford and Mr. Lemus were breaching fiduciary duties owed to Mr. DeNaut when Gordon Rees served Mr. DeNaut with a California Superior Court summons and lawsuit on behalf of Coinmint, in which Mr. DeNaut was named as a defendant, and then thereafter, when they continued to prosecute that action against Mr. DeNaut.

68. Coinmint and Mr. Foret gave substantial assistance and/or encouragement to Mr. Alford and Mr. Lemus in their violations of duties to Mr. DeNaut. Mr. Foret, on behalf of Coinmint, arranged for the January 6, 2023 call and participated in it; Mr. Foret heard on that call Mr. Alford's promises to represent Mr. DeNaut, and that Mr. DeNaut accepted. On information and belief, Mr. Foret, on behalf of Coinmint, then directed Mr. Alford and Mr. Lemus to violate their duties to Mr. DeNaut and to act adversely to him. This is supported by Mr. Foret's testimony during the District of Connecticut Hearing in which he testified that he had responsibility for overseeing the Arbitration.

69. Coinmint and Mr. Foret acted with malice, with the intent to injure Mr. DeNaut, and with a conscious disregard of Mr. DeNaut's rights.

70. Coinmint's and Mr. Foret's conduct was deliberate, and was a substantial factor in causing injury to Mr. DeNaut, thereby entitling Mr. DeNaut to actual and punitive damages.

### THIRD CAUSE OF ACTION

### LEGAL MALPRACTICE

### (Against Fletcher Alford and Robert Lemus)

71. The allegations of paragraphs 1 through 70 are re-alleged and incorporated herein by reference.

72. Mr. Alford and Mr. Lemus were in an attorney-client relationship with Mr.

17

DeNaut, as recognized by the U.S. District Court for the District of Connecticut in *Katena Computing Techs., Inc. v. DeNaut*, No. 23-mc-48.  *See* Exhibit A.  Mr. DeNaut formed an attorney-client relationship with Mr. Alford and Mr. Lemus on the January 6, 2023 call when: (1) Mr. Alford offered for Gordon Rees to represent Mr. DeNaut and Mr. DeNaut accepted; and (2) Mr. DeNaut shared confidential information with Mr. Alford and Mr. Lemus in order to solicit legal advice, and Mr. Alford provided such advice.

73.     Accordingly, Mr. Alford and Mr. Lemus owed Mr. DeNaut the duty of all attorneys to use such skill, prudence, and diligence as members of their profession commonly possess and exercise.

74.     Mr. Alford, as a California-barred attorney, was required to comply with his duties as an attorney in his dealings with Mr. DeNaut.  These ethical and fiduciary duties included, but are not limited to, California Rules of Professional Conduct:

    a)  1.9(a), prohibiting an attorney from acting adversely to a client it represented, in the same or a substantially related matter, absent informed written consent; and

    b)  1.9(c), 4.3(a), and 1.13(f), prohibiting an attorney from using information acquired by virtue of its representation of a former client in a manner that disadvantages the former client.

75.     As a Texas-barred attorney, Mr. Lemus was bound by nearly identical ethical rules provided by, but not limited to, Texas Disciplinary Rules of Professional Conduct 1.05(b), 1.06(d) and (e), and 1.09(a) and (c).

76.     The ethical and fiduciary duties Mr. Alford and Mr. Lemus were bound to follow are substantially the same in Connecticut, where Mr. DeNaut resides.

77.     Mr. Alford and Mr. Lemus committed malpractice against Mr. DeNaut when Gordon Rees, at the direction of Mr. Alford and Mr. Lemus, served Mr. DeNaut (their then-client) with a summons to testify and produce documents in the Arbitration, and then thereafter, when they pursued an examination of Mr. DeNaut in the Arbitration.  Mr. Alford and Mr. Lemus again committed malpractice against Mr. DeNaut when Gordon Rees, at the direction of Mr. Alford, served Mr. DeNaut with a California Superior Court summons and lawsuit on behalf of Coinmint,

1  in which Mr. DeNaut was named as a defendant, and then thereafter, when they continued to

2  prosecute that action against Mr. DeNaut.

3      78.    By committing these acts against Mr. DeNaut, Mr. Alford and Mr. Lemus failed

4  to use such skill, prudence, and diligence as members of their profession commonly possess and

5  exercise.

6      79.    Mr. Alford and Mr. Lemus acted with malice, with the intent to injure Mr. DeNaut,

7  and with a conscious disregard of Mr. DeNaut's rights.

8      80.    Mr. Alford's and Mr. Lemus's conduct was deliberate, and was the direct,

9  proximate, and foreseeable cause of injury to Mr. DeNaut.  Mr. DeNaut is therefore entitled to

10  actual and punitive damages.

11                     **FOURTH CAUSE OF ACTION**

12              **AIDING AND ABETTING LEGAL MALPRACTICE**

13              **(Against Coinmint, LLC and Randall Foret)**

14      81.    The allegations of paragraphs 1 through 80 are re-alleged and incorporated herein

15  by reference.

16      82.    Mr. Alford and Mr. Lemus were in an attorney-client relationship with Mr.

17  DeNaut, as recognized by the U.S. District Court for the District of Connecticut in *Katena*

18  *Computing Techs., Inc. v. DeNaut*, No. 23-mc-48.  *See* Exhibit A.  Mr. DeNaut formed an

19  attorney-client relationship with Mr. Alford and Mr. Lemus on the January 6, 2023 call when: (1)

20  Mr. Alford offered for Gordon Rees to represent Mr. DeNaut and Mr. DeNaut accepted; and (2)

21  Mr. DeNaut shared confidential information with Mr. Alford and Mr. Lemus in order to solicit

22  legal advice, and Mr. Alford provided such advice.

23      83.    Accordingly, Mr. Alford and Mr. Lemus owed Mr. DeNaut the duty of all

24  attorneys to use such skill, prudence, and diligence as members of their profession commonly

25  possess and exercise.

26      84.    Mr. Alford, as a California-barred attorney, was required to comply with duties as

27  an attorney in his dealings with Mr. DeNaut.  These ethical and fiduciary duties included, but are

28  not limited to, California Rules of Professional Conduct:

                                  19

a) 1.9(a), prohibiting an attorney from acting adversely to a client it represented, in the same or a substantially related matter, absent informed written consent; and

b) 1.9(c), 4.3(a), and 1.13(f), prohibiting an attorney from using information acquired by virtue of its representation of a former client in a manner that disadvantages the former client.

85.     As a Texas-barred attorney, Mr. Lemus was bound by nearly identical ethical rules provided by, but not limited to, Texas Disciplinary Rules of Professional Conduct 1.05(b), 1.06(d) and (e), and 1.09(a) and (c).

86.     The ethical and fiduciary duties Mr. Alford and Mr. Lemus were bound to follow are substantially the same in Connecticut, where Mr. DeNaut resides.

87.     Mr. Alford and Mr. Lemus committed malpractice against Mr. DeNaut when Gordon Rees, at the direction of Mr. Alford and Mr. Lemus, served Mr. DeNaut (their then-client) with a summons to testify and produce documents in the Arbitration, and then thereafter, when they pursued an examination of Mr. DeNaut in the Arbitration.  Mr. Alford and Mr. Lemus again committed malpractice against Mr. DeNaut when Gordon Rees, at the direction of Mr. Alford, served Mr. DeNaut with a California Superior Court summons and lawsuit on behalf of Coinmint, in which Mr. DeNaut was named as a defendant, and then thereafter, when they continued to prosecute that action against Mr. DeNaut.

88.     By committing these acts against Mr. DeNaut, Mr. Alford and Mr. Lemus failed to use such skill, prudence, and diligence as members of their profession commonly possess and exercise.

89.     Coinmint and Mr. Foret knew that Mr. Alford and Mr. Lemus were committing malpractice against Mr. DeNaut when Gordon Rees served Mr. DeNaut with a summons to testify and produce documents in the Arbitration, and then thereafter, when they pursued an examination of Mr. DeNaut in the Arbitration.  Coinmint and Mr. Foret also knew that Mr. Alford and Mr. Lemus were committing malpractice against Mr. DeNaut when Gordon Rees served Mr. DeNaut with a California Superior Court summons and lawsuit on behalf of Coinmint, in which Mr. DeNaut was named as a defendant, and then thereafter, when they continued to prosecute that

20

action against Mr. DeNaut.

90. Coinmint and Mr. Foret gave substantial assistance and/or encouragement to Mr. Alford and Mr. Lemus in their malpractice against Mr. DeNaut. Mr. Foret, on behalf of Coinmint, arranged for the January 6, 2023 call and participated in it; Mr. Foret heard on that call Mr. Alford's promises to represent Mr. DeNaut, and that Mr. DeNaut accepted. On information and belief, Mr. Foret, on behalf of Coinmint, then directed Mr. Alford and Mr. Lemus to violate their duties to Mr. DeNaut and to act adversely to him. This is supported by Mr. Foret's testimony during the District of Connecticut Hearing in which he testified that he had responsibility for overseeing the Arbitration.

91. Coinmint and Mr. Foret acted with malice, with the intent to injure Mr. DeNaut, and with a conscious disregard of Mr. DeNaut's rights.

92. Coinmint's and Mr. Foret's conduct was deliberate, and was a substantial factor in causing injury to Mr. DeNaut, thereby entitling Mr. DeNaut to actual and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and seeks to recover the following relief from Defendants:

a) Compensatory damages in an amount to be determined at trial (including but not limited to the legal fees incurred by Mr. DeNaut in attempting to rectify his lawyers' breaches), in an amount that exceeds $75,000;

b) Exemplary and punitive damages as allowed by law;

c) Prejudgment interest as allowed by law;

d) Attorneys' fees and costs of suit incurred herein; and

e) Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

Dated: January 8, 2024
        San Francisco, California

Respectfully submitted,

KOBRE & KIM LLP

/s/ Daniel Zaheer
Daniel Zaheer (State Bar No. 237118)
150 California Street, 19th Floor
San Francisco, California 94111
Tel.:    +1 415 582 4800
Fax.:    +1 415 582 4811
Email: daniel.zaheer@kobrekim.com

Steven G. Kobre (*pro hac vice* forthcoming)
Benjamin Sirota (*pro hac vice* forthcoming)
Caroline Rivera (*pro hac vice* forthcoming)
800 Third Avenue
New York, New York 10022
Tel.:    +1 212 488 1200
Fax.:    +1 212 488 1220
Email:  steven.kobre@kobrekim.com
         benjamin.sirota@kobrekim.com
         caroline.rivera@kobrekim.com

*Attorneys for Plaintiff Jim DeNaut*

22